BORDER LINE TRANSP. CO. v. CANADIAN PAC. RY. CO.

THE WAKENA. THE NITINAT.

(District Court, W. D. Washington, N. D.   April 8, 1919.)

No. 4071.

1. COLLISION ⇐⇒79—CAUSED BY MUTUAL FAULTS OF VESSELS MEETING.
   Evidence *held* to show that the motor vessel Wakena and the tug Nitinat, meeting at sea were both in fault for a collision; the Nitinat for answering the signal of the Wakena and then failing to navigate accordingly, and the Wakena for not reversing when her first signal was unanswered.

2. COLLISION ⇐⇒11—VESSELS IN SAME WATERS BOUND BY SAME RULES.
   All vessels navigating in the same waters are bound by the same rules.

In Admiralty.   Suit for collision by the Border Line Transportation Company, owner of the motor vessel Wakena, against the Canadian Pacific Railway Company, owner of the tug Nitinat.   Decree dividing damages.

Huffer & Hayden, of Seattle, for libelant.
Bogle, Merritt & Bogle, of Seattle, for respondent.

NETERER, District Judge.   On March 1, 1918, at a point approximately 2,000 yards southerly on a straight line drawn from Turn Point, Stuart Island, to Kellett Bluff, Henry Island, and approximately 100 yards west, the motor vessel Wakena and steam tug Nitinat came into collision.   The dividing line between inland waters and the open sea is a straight line from Kellett Bluff to Turn Point.   Coast Pilot, U. S. page 239.

The Wakena is a twin screw motor ship of 316 net registered tons, flat bottom, 7½ feet draft, and was proceeding light in ballast at a speed of 6½ knots per hour from Vancouver to Victoria, B. C.   The Nitinat is an iron steam tug of 14 feet 6 inches draft, with a speed of 7 knots an hour, having in tow a barge between 290 and 300 feet long, loaded with 15 full cars; the towline from the Nitinat was approximately 900 feet long; the tide was at flood, which increased the tug's speed to 8 knots an hour.   The Nitinat was on a voyage from Esquimalt to Vancouver, B. C.   The Wakena was proceeding in a direction south by east, and the Nitinat N. W. by N.

[1] The evidence is conclusive that both vessels acted upon the assumption that they were navigating upon inland waters.   The navigating officers of both vessels are in error as to the relative location of the vessels when first observed.   The following diagram portrays the waters in which the vessels were navigating, and the courses and location of the vessels as indicated by the first officer of the Wakena:

⇐⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1. Indicates Wakena's course, Mouatt Point to Turn Point.
2. Location of Wakena when the Nitinat and the Adelaide were first observed.
3. Nitinat, when first observed by Wakena's first officer.
4. Wakena's course after reaching a point 300 yards off Turn Point.
5. Course Nitinat appeared to be taking.
6. Point of collision.
7. Where Adelaide was at time of passing Wakena.
8. Adelaide when first sighted by Wakena.

The following diagram portrays the relative situation of the vessels as given by the first officer of the Wakena immediately prior to the collision:

1. Bearing of boats at time of Wakena's first whistle, being about one-fourth of a mile or more apart.
2. Second whistle, about 200 yards closer.
3. Four whistles of the Nitinat.
4. Collision of boats.

The following diagram portrays the relative position of the vessels as given by A. B. Robson, the officer on watch of the Nitinat:

Nitinat 1. Course of Nitinat, northerly.
Wakena 1. Position of Wakena on hearing Wakena's one blast of whistle.
Nitinat 2. When answering Wakena's first blast.
Nitinat 3—Wakena 3. Position of boats just before collision.

The distance between the vessels at the time of answering the Wakena's one blast of the whistle is one-fourth of a mile, as given by Mr. Robson.

The testimony of the first officer of the Nitinat that he was one-fourth of a mile to the starboard of the Wakena places the vessels in a relation to each other where a collision would be impossible, and the maneuvering of the vessels as indicated by the diagram made by this witness (Robson) emphasizes such fact. The statement of the first officer of the Wakena that the Nitinat was far to his port side, as indicated by the diagram, is greatly exaggerated.

The testimony establishes that these vessels, when first approaching, were green to green. This relation of the vessels appears to be sustained by the testimony of the first officer of the Adelaide, who, after having passed the Nitinat and its tow, and the Wakena nearly half a mile to starboard, looking back, saw the vessels in such relation that a

collision was inevitable, which would indicate, considering the location of the Adelaide, that the Nitinat was on the Wakena's port.

[2] Much emphasis is placed by respondent upon the fact that the collision occurred in the open sea and without the jurisdiction of the Inland Rules of the Road. All vessels running upon the same waters should be bound by the same rules. The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, 40 L. Ed. 771. However, in this case, both parties were proceeding upon the theory that they were navigating inland waters. The first officer of the Nitinat in answer to the question, "When you answered her one blast with one blast, what did you do?" replied, "I ported the helm; that is, I directed my course to starboard."

The circumstances considered, and the facts upon which there is no dispute, or are established, indicate that, when one blast was given by the Wakena and answered by the Nitinat, if the Nitinat had properly maneuvered as indicated by the signal, the collision would not have occurred; or, if that was impossible of execution, then the Nitinat is at fault in acquiescing in a maneuver which it was dangerous or impossible to execute. I think the Wakena was at fault in not reversing its engine when it received no response to its first blast and saw that a collision was inevitable.

I think both vessels are at fault, and the damages should be divided.